IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GARTH O. LEIGHTON**,                                      Civil Case No. 09-6270-KI

                Plaintiff,

   vs.                                                      OPINION AND ORDER

**COMMISSIONER SOCIAL SECURITY
ADMINISTRATION**,

                Defendant.


    Brent Wells
    Harder Wells Baron & Manning, PC
    474 Willamette Street, Suite 200
    Eugene, Oregon  97401

    Natalie Bolli-Jones
    1079 E. Riverside Dr., Suite 203
    St. George, UT 84790

        Attorneys for Plaintiff

Adrian L. Brown
United States Attorney's Office
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Terrye Erin Shea
Thomas M. Elsberry
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington  98104

      Attorneys for Defendant

KING, Judge:

Garth Leighton brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance benefits ("DIB") under Title II of the Social Security Act.

## PROCEDURAL BACKGROUND

Mr. Leighton filed an application for benefits on February 15, 2006, with an alleged onset date of December 30, 2005.  The claim was denied initially and upon reconsideration.  Mr. Leighton requested a hearing, which was held before administrative law judge ("ALJ") Catherine Lazuran on September 27, 2006.  At the hearing, Mr. Leighton amended the alleged onset date to November 15, 2007.  The ALJ issued a decision on March 4, 2009, finding Mr. Leighton not disabled.  When the Appeals Council denied a request for review, the ALJ's decision became the final decision of the Commissioner.  By letter dated November 23, 2009, the Commissioner

informed Mr. Leighton that he had been found disabled and entitled to benefits as of September 2009, six months after the date of the ALJ's decision finding him not disabled.

Mr. Leighton was born in 1958, and was 51 years old at the time of the ALJ's decision. He has a high school education. He has not engaged in substantial gainful activity since November 15, 2007. His past relevant work was as an auto mechanic and security guard. Mr. Leighton alleges disability on the basis of musculoskeletal impairments, headaches, depression, hearing loss and tinnitus. Mr. Leighton was found 100% disabled by the Veterans Administration ("VA") effective May 23, 2006. The Commissioner argues that the agency's finding of disability as of September 2009 is not relevant to the issue presented here, which is whether the Commissioner's decision of March 4, 2009, denying Mr. Leighton's application for disability benefits for the period between November 15, 2007, the alleged onset date, and March 4, 2009, the date of the Commissioner's decision, was based on substantial evidence in the record and free of legal error.

## STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). However, the Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which

"has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42

U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

        The Commissioner has established a five-step sequential process for determining whether

a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,

416.920.  At step one, the Commissioner determines whether the claimant has engaged in any

substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the Commissioner goes

to step two, to determine whether the claimant has a "medically severe impairment or combination

of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  That

determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which
> significantly limits your physical or mental ability to do basic work activities, we
> will find that you do not have a severe impairment and are, therefore, not disabled.
> We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c).  If the impairment is severe, the evaluation proceeds to the third step,

where the Commissioner determines whether the impairment meets or equals "one of a number of

listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial

gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41.  If a claimant's impairment meets or equals one of

the listed impairments, she is considered disabled without consideration of her age, education or

work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

        If the impairment is considered severe, but does not meet or equal a listed impairment, the

Commissioner considers, at step four, whether the claimant can still perform "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant shows an inability to perform her past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity ("RFC") to do other work in consideration of the claimant's age, education and past work experience.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

## MEDICAL EVIDENCE

On October 7, 2004, Mr. Leighton was seen at the VA for a general medical examination, mental evaluation, and hearing tests.  At that time, John Peterson, M.D., the medical examiner, noted that Mr. Leighton had compression fractures with cervical cord impingement at T6 to T8, with degenerative changes and Schmorl's nodes at T7 and T8, with chronic pain syndrome of the mid-back and left leg; intermittent right upper trapezius myofascial pain syndrome; bilateral cubital tunnel syndrome with right deep elbow pain, secondary to arthritis; right costocondritis related to the compression fractures; and "mildly disabling" daily headaches.  Tr. 226.  Dr. Peterson found functional limitations on standing (no more than 30 minutes) and walking (up to a quarter of a mile).  Mr. Leighton had no evidence of abnormal weightbearing except for his antalgic gait, limping on his left leg and leaning on a walking stick.

On the same day, Mr. Leighton was given a mental evaluation by Sukhinderpal Aulakh, M.D. Dr. Aulakh wrote that there had been a medical board consultation in psychiatry, where Mr. Leighton had been diagnosed as having major depression.  Dr. Aulakh concurred in that diagnosis. On May 26, 2006, Mr. Leighton was diagnosed with a  mood disorder, not otherwise specified.

On June 7, 2006, Mr. Leighton was given a psychological evaluation by Jeff Clausel, Ph.D.  Dr. Clausel noted that he did not have mental health records available for review.  Mr.

Leighton reported "problems with anger," as a result of his back and neck injury.  Tr. 244.  Dr.

Clausel wrote that he was "[u]nable to reliably assess" the severity of Mr. Leighton's anger

because available medical records were "not consistent with patient reports."  Dr. Clausel wrote,

"In terms of mental health symptoms, symptom inconsistency and some suspicions of

exaggeration were noted.  Malingering could not be ruled out."  *Id.*  Dr. Clausel specifically noted

that Mr. Leighton had told a medical practitioner in August 2000 that his back pain was the result

of repeatedly "having to jump down off tanks that were approximately three to four feet before he

would hit the ground," while Mr. Leighton had told Dr. Clausel that he had "played lawn dart and

was blown off an M-1 tank and landed on my head and crushed my T5, 6, 7 and 8 vertebrae."  Tr.

244-45.

Dr. Clausel thought Mr. Leighton exaggerated his difficulties on formal psychological

testing; demonstrated a hand tremor early in the interview, but not later; gave cryptic comments

and vague answers; had a tendency to "irritably or dismissedly abandon tasks that became

moderately challenging;" and showed a "distinct trend toward antisociality or opportunism" in

thought content.  Tr. 246. However, Dr. Clausel concluded that Mr. Leighton demonstrated a

"[c]learly above average" intellect, intact core reasoning ability, normal attention span, and the

ability to maintain sustained focus on complicated tasks.

Dr. Clausel's diagnoses were:  rule out Malingering; rule out Conversion Disorder; and

suspected Immature-spectrum or Cluster B Personality Disorder, with Histrionic and Oppositional

Defiant Features.  Tr. 248.  Dr. Clausel found no impairment in Mr. Leighton's ability to

understand and remember simple instructions, sustain concentration and attention, or in his

adaptive skills. He thought Mr. Leighton had a mild to moderate impairment in his ability to

engage in appropriate social interaction, because of the suspected underlying personality disorder

and manipulative interpersonal style.

Charles Hoffman, M.D. examined Mr. Leighton on one occasion and wrote a disability

report on June 21, 2006.  Upon physical examination, Dr. Hoffman found slightly decreased

strength about the shoulders, mildly decreased strength about the wrists, and an "intention" tremor

of the right hand that decreased his ability to reach, hold, grip and manipulate.  Lower extremities

were unremarkable, but Mr. Leighton had "difficulty arising because of back pain," and used an

ambulatory device to walk.  However, he was able to toe walk, heel walk, and use tandem gait

with difficulty.  Tr. 251.  In Dr. Hoffman's opinion, Mr. Leighton was limited to standing for no

more than two hours in a day, walking no more than one hour a day, and sitting no more than four

hours a day.  Dr. Hoffman thought Mr. Leighton would "have difficulty lifting more than 20

pounds occasionally andcarrying more than 10 pounds occasionally," and that his "ability to

handle objects [was] limited by his right sided tremor."  Tr. 251.

A series of x-rays and MRIs in November 2007 showed mild to moderate degenerative

disk disease at T6-T9.  The thoracic spine was otherwise normal.  Views of the lumbosacral spine

showed mild degenerative disk disease at L3-L4 and at L4-L5.  The remainder of the lumbar spine

was normal.

Camille LaCroix, M.D. performed a psychiatric evaluation on January 17, 2008.  Mr.

Leighton said that since his original evaluation in October 2004, he had done "fairly well" on

medications, but quit taking them when he ran out four or five months earlier.  Tr. 326.  Since

then he had had low mood, broken sleep, and stress due to financial strain. He reported decreased

patience and self esteem, feeling sorry for himself, increased irritability, and lack of enjoyment of

life.  Dr. LaCroix diagnosed major depressive disorder, chronic, and anxiety disorder, not

otherwise specified (panic versus adjustment disorder).  Dr. LaCroix assigned a Global

Assessment of Functioning ("GAF") score of 50.[1]

**HEARING TESTIMONY**

Mr. Leighton testified at the hearing that he had attempted two jobs as a security guard in

2007, but was unable to walk, climb and reach as required, and resigned.  He was in the active

duty Army between 1977 and 1980, then in the National Guard until he was activated back into

the Army in 2003, serving  as a combat engineer at Fort Lewis, Washington, for two years.  He

was medically discharged from the military.

Mr. Leighton said he was unable to work because of pain and loss of movement in his

right arm, right hand and left leg.  He said he was able to lift about eight pounds occasionally;

stand an hour to an hour and a half in a period of eight hours; sit two hours in an eight hour

period; and walk about three blocks.  He took Percocet twice a day for pain, amitriptyline once a

day for sleep, and 4,000 milligrams of ibuprofen a day, for pain.  He received mental health

treatment at the VA hospital in Boise and in the Grant County Mental Health Department in John

Day.  He used hearing aids in both ears, which worked "extremely well."  Tr. 42.

He said he needed help from his wife with tying his shoes and putting on his socks.  He

did "a little" sweeping, vacuuming and mopping.  Tr. 45.  He could mow the front yard, using a

---

[1] The GAF Scale represents the clinician's judgment of the individual's overall level of
functioning, and is divided into 10 ranges.  American Psychiatric Association, *Diagnostic and
Statistical Manual of Mental Disorders Fourth Edition Text Revision* ("DSM-IV-TR") 32.  The
description of each 10-point range in the GAF scale has two components: symptom severity and
functioning.  *Id.*  The GAF rating is within a particular decile if either the symptom severity or
the level of functioning falls within the range. *Id.*  A GAF of 50 is described as "serious
symptoms" or "any serious impairment in social, occupational, or school functioning."  *Id.* At 34.

push mower, once every two or three weeks.  He was able to walk his dogs for three blocks, once

or twice a week.  He went to lodge meetings about once a week and traveled to the VA hospital in

Boise two or three times a year.  He spent 25-30 minutes, every other day, on a computer.  He

drove three days a week from his house to the post office, a distance of about two miles.  For

about half his waking hours, he sat in a recliner to elevate his feet and straighten out his right arm.

He said it had become increasingly difficult to use his right, dominant hand.

The ALJ called a vocational expert ("VE"), Patricia Ayerza.  The VE characterized Mr.

Leighton's past work as follows:  auto mechanic, medium exertion level, skilled;  soldier, very

heavy and semiskilled; security guard, light, semi-skilled.  The ALJ asked the VE to consider a

hypothetical individual with Mr. Leighton's age, education and past relevant work experience who

was able to lift 20 pounds occasionally and 10 pounds frequently; stand and walk six out of eight

hours; sit six out of eight hours; occasionally climb a ladder, rope or scaffold; occasionally stoop

and crouch; and frequently use the fingers of the right hand.

The VE opined that such an individual could perform the security guard position.  The VE

opined that such an individual could transfer skills from the security guard position, which Mr.

Leighton had held for three months, and perform "gate guard type of position," which was "very

closely related" to the security guard work.  Tr. 61.

### ALJ'S DECISION

The ALJ found that Mr. Leighton's impairments of degenerative disc disease in the lumbar

and thoracic spine and hearing loss were severe.  However, the impairments did not, singly or in

combination, meet or medically equal any of the listed impairments.  The ALJ found that although

Mr. Leighton could not return to his past relevant work, he retained the residual functional

capacity ("RFC") to perform light work, except for limitations on his ability use the fingers of his left hand and on exposure to loud noise.  The ALJ also found that Mr. Leighton had work skills from his past relevant work that were transferable to other occupations identified by the VE, including small product assembler and, with use of transferable "semi-skills" from past work as a security guard, a gate guard position.

## DISCUSSION

Mr. Leighton asserts that the ALJ erred by 1) giving undue weight to the opinions of non-examining physicians and failing to give proper consideration to the opinions of treating physicians at the VA hospital or examining physician Dr. Hoffman, and 2) failing to give proper consideration to Mr. Leighton's award of 100% disability from the VA.  Additionally, Mr. Leighton asserts that this case must be remanded to resolve the conflict created by the Commissioner's finding that Mr. Leighton was disabled as of September 2009, or for an award of benefits.

1.    Weight given to physicians' opinions

Title II's implementing regulations distinguish among the opinions of three types of physicians: 1) those who treat the claimant; 2) those who examine but do not treat; and 3) those who neither examine nor treat. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's and an examining physician's opinion carries more weight than a reviewing physician's. Holohan, 246 F.3d at 1202; Lester, 81 F.3d at 830; 20 C.F.R. § 404.1527(d).

The ALJ gave "significant weight" to the opinion of reviewing psychologist Bill Hennings, Ph.D., who concluded that Mr. Leighton's depression imposed only mild limitations on his activities of daily living, social functioning, and maintaining concentration, persistence or pace.  Tr. 265-276.  Dr. Hennings's opinions were based primarily on the findings of Dr. Clausel. Tr. 277. With respect to Mr. Leighton's physical limitations, the ALJ gave "significant weight" to the opinions of reviewing physicians Mary Ann Westfall, M.D., and Martin Kehrli, M.D., who concluded in July 2006 that he was able to lift up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk about six hours out of an eight-hour workday; and balance, kneel and crouch only occasionally.  The ALJ rejected Dr. Hoffman's June 21, 2006 opinion that Mr. Leighton could stand for 15 minutes at a time and for two hours in a day, and walk for only five minutes at a time, for one hour during a day.  These opinions were rejected because they were "not consistent with the objective medical evidence," and because Dr. Hoffman had done "little objective testing" and appeared to have relied upon Mr. Leighton's subjective reporting of his medical history and symptoms.  Tr. 21.  The ALJ found Mr. Leighton's subjective reports to physicians and his testimony not entirely credible, based on Mr. Leighton's statements in March 2006 that he was able to perform household chores, drive a car, shop in stores, volunteer at the Fire Department, engage in social activities, walk his dogs, and look for work.  Tr. 20.  The ALJ also noted that Mr. Leighton had told VA psychiatrist Camille LaCroix, M.D., on January 17, 2008, that he could perform a job but that there were very few jobs available in the small town where he lived.

Notably absent from the ALJ's findings is any reference to Mr. Leighton's physicians at the VA.  So, for example, although the ALJ assigned relative weights to the evidence from Dr.

Page 11 - OPINION AND ORDER

Clausel and Dr. Hennings, she did not evaluate the psychiatric evaluations by Dr. Aulakh in October 2004, and Dr. LaCroix in January 2008.   As discussed below, I conclude that a remand is necessary to address this evidence in the context of whether Mr. Leighton was disabled between November 2007 and September 2009.

> 2.       Consideration of VA disability award

In McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) court held, as a matter of first impression, that the ALJ must ordinarily give great weight to a VA determination of disability because of the "marked similarity between these two federal disability programs." However, because the VA and SSA criteria for determining disability are not identical, the ALJ may give less weight to a VA disability rating if the ALJ gives persuasive, specific, valid reasons for doing so that are supported by the record. Id.

The ALJ stated in her opinion that she had "considered" the VA determination, but concluded that it did not support a finding that Mr. Leighton was entitled to Social Security benefits because 1) the VA "relied heavily" on records received before May 2006 in reaching their decision" and 2)  the VA "relied on the claimant's subjective report of his symptoms," despite the evidence that Mr. Leighton had worked during 2007.  Tr. 21.

The first of these reasons is neither persuasive nor valid, because, since the VA disability award was effective May 23, 2006, the VA decision *necessarily* relied on medical evidence received before May 2006.  The second reason, that the VA relied on Mr. Leighton's subjective reports, might have been sufficient to justify giving the VA rating less than "great weight," if the ALJ had been specific in pointing out inconsistencies between subjective reports and objective clinical evidence, but she was not.  The ALJ disregarded the significant objective evidence in the

VA records, including x-rays, MRIs, chart notes, physical examinations, psychiatric evaluations, laboratory values, and medication records.  While the fact that Mr. Leighton worked briefly after May 2006 might have had some effect on the ALJ's consideration of the VA award, the ALJ's mere reference is not specific, persuasive or well-supported enough to support her decision to give the VA award no evidentiary weight at all.

        3.     <u>Remand</u>

Sentence four of 42 U.S.C. § 405(g) gives the court discretion to decide whether to remand for further proceedings or for an award of benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).

In <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996), the court held that improperly rejected evidence should be credited and an immediate award of benefits be made when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  I conclude that the second and third parts of the <u>Smolen</u> test are not satisfied here, so that a remand for an award of benefits is not warranted.  However, a remand for further administrative proceedings is required to address the question of Mr. Leighton's disability between the alleged onset date, November 2007, and the award of disability benefits in September 2009.

///


///

**CONCLUSION**

This case is remanded for further administrative proceedings.  The Commissioner is ordered to re-evaluate the medical evidence and the VA disability award for the purpose of determining whether Mr. Leighton was disabled during the period between November 2007 and September 2009.

IT IS SO ORDERED.

Dated this _____7th_____ day of March, 2011.


                                    __/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge

Page 14 - OPINION AND ORDER